**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                |   |
|---|---|
| CENTOCOR ORTHO BIOTECH, INC.,     Plaintiff,     v. ABBOTT GMBH & CO., KG,     Defendant. | Civil Action No. 09-1653 (EGS) |

**MEMORANDUM OPINION**

On August 28, 2009, plaintiff Centocor Ortho Biotech, Inc. ("Centocor"), filed two related patent actions in this Court. Civil action number 09-1653 seeks review of the United States Patent and Trademark Office's decision regarding Patent Number 6,914,128 (the "'128 patent") pursuant to 35 U.S.C. § 146 (hereinafter, "Civil Action 09-1653" or "Section 146 Action"). Civil action number 09-1654 seeks a declaratory judgment of non-infringement and invalidity of the '128 patent and Patent Number 7,504,485 (the "'485 patent") (hereinafter, "Civil Action 09-1654" or "Declaratory Judgment Action"). Pending before the Court is a motion to transfer venue filed by Defendant Abbot GmbH & Co., KG ("Abbott GmbH"). Upon consideration of the motion, the response and reply thereto, the applicable law, and for the reasons stated below, the Court **GRANTS** defendant's motion to transfer venue. Accordingly, Civil Action 09-1653 and Civil

Action 09-1654, shall be transferred to the United States District Court for the District of Massachusetts, Central Division (the "District of Massachusetts") where Abbott GmbH's first-filed action is pending.

**I.   BACKGROUND**

On December 12, 2007, the United States Patent and Trademark Office Board of Patent Appeals and Interferences ("USPTO Board") declared an interference between Abbott GmbH's '128 patent and Centocor's 10/912,994 patent application (the "'994 application"), both of which cover antibodies that bind to the interleukin-12 ("IL-12").  *See* Section 146 Action Complaint ("146 Compl.") ¶ 7; Declaratory Judgment Action Complaint ("DJ Compl.") ¶ 11.  Antibodies that bind to IL-12 are used to treat, among other things, psoriasis.  DJ Compl. ¶ 12.  Interference proceedings were instituted by the USPTO Board to determine which group of inventors was the first to invent the overlapping subject matter, as well as the obviousness of the '128 patent.  Pl.'s Opp'n Br. at 2-3.  On August 6, 2009, the USPTO Board ruled in favor of Abbott GmbH on these issues.

Four days after receiving this ruling, on August 10, 2009, defendant Abbott GmbH and Abbott Bioresearch Center ("ABC"), a Massachusetts-based sister company of Abbott GmbH, filed suit against Centocor in the District of Massachusetts (hereinafter, the "Massachusetts Litigation").  *See Abbott GmbH & Co., KG v.*

*Centocor Ortho Biotech, Inc.*, No. 09-cv-11340-FDS (D. Mass.) (Saylor, J.).  In the Massachusetts Litigation, Abbott GmbH and ABC allege that Centocor infringed the '128 patent and '428 patent by making, using, selling, or offering for sale STELARA.  Pl.'s Opp'n Br. at 3.  STELARA is an antibody product that was developed by Centocor for the treatment of psoriasis.  Pl.'s Opp'n Br. at 3.  STELARA is now approved for sale nationwide, including in the District of Columbia and Massachusetts.  Pl.'s Opp'n Br. at 10.

On August 28, 2009, after being served with the complaint in the Massachusetts Litigation, Centocor instituted the Section 146 Action and Declaratory Judgment Action in this Court (collectively, the "D.C. Litigation").  Pl.'s Opp'n Br. at 3-4.  The Section 146 Action challenges the USPTO Board's rulings, and the Declaratory Judgment Action requests declarations of non-infringement and invalidity of the '128 and '485 patents.[1]

Concluding that its Declaratory Judgment Action would dispose of all issues pleaded in the Massachusetts Litigation,

---

[1]  ABC is not a party to the D.C. Litigation.  Centocor explains that it did not name ABC in its Section 146 Action because ABC was not a party to the interference proceedings; similarly, it did not name ABC in its Declaratory Judgment Action because ABC was not an assignee of the '128 patent or the '485 patent.  Pl.'s Opp'n Br. at 4.  Although not relevant to this action, Centocor argues that ABC lacks standing to participate in the Massachusetts Litigation and intends to move to have ABC dismissed pursuant to Federal Rule of Civil Procedure 12(c).  *See* Pl.'s Opp'n Br. at 8 n.1.

*see* Pl.'s Opp'n Br. at 4, Centocor filed a motion to transfer venue in the District of Massachusetts, seeking transfer of the Massachusetts Litigation to this Court.  *See Abbott GmbH & Co., KG v. Centocor Ortho Biotech Inc.*, No. 09-cv-11340-FDS, Docket No. 11 (D. Mass.) (requesting that the action be transferred to the District of Columbia "for reasons of efficiency and judicial economy");[2] *see also* Pl.'s Opp'n Br. at 1 ("Centocor recognizes that significant efficiency and economy would flow from having these actions litigated in the same forum as Abbott GmbH's claims in the Massachusetts Litigation, but in view of all the factors of justice and convenience, this district, not Massachusetts, should be the forum where all three actions are heard.").  Abbott GmbH opposes transfer of the Massachusetts Litigation to this forum.  Indeed, on the same day that it filed its opposition brief in the Massachusetts Litigation, Abbott GmbH filed a motion in this Court seeking transfer of the D.C. Litigation to the District of Massachusetts based on the "first-filed rule" and 28 U.S.C. § 1404(a).  *See infra* Part II.

This case, therefore, presents a unique circumstance in which all parties agree that the pending litigation should be resolved by one court – either this Court or the District of Massachusetts.  For the reasons discussed below, the Court

---

[2]   This motion has not yet been resolved by the District of Massachusetts.

determines that it is appropriate to transfer the D.C. Litigation to the District of Massachusetts.

**II.   STANDARD OF REVIEW**

"The first-to-file rule dictates that when two actions involving the same subject matter are pending, the first-filed action should proceed to the exclusion of the later-filed action."  *Intervet, Inc. v. Merial Ltd.*, 535 F. Supp. 2d 112, 114 (D.D.C. 2008); *see also Washington Metro. Area Transit Auth. v. Ragarose*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("For more than three decades the rule in this circuit has been that [w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first . . . ." (internal quotation marks omitted)).  The forum of the first-filed case is generally favored, "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise."  *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (internal quotation marks omitted); *see generally Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975) (recognizing the general rule favoring the earlier-filed action, but emphasizing that it should not be mechanically applied in cases where "countervailing equitable considerations" counsel against it).  Relevant equitable considerations include "the

convenience and availability of the witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Intervet, Inc. v. Merial, Ltd.* ("*Intervet II*"), No. 08-2162, 2009 U.S. Dist. LEXIS 84028, at *8 (D.D.C. Sept. 15, 2009).

The federal venue transfer statute – § 1404(a) – provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has discretion to adjudicate motions to transfer according to an "'individualized case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The moving party – in this case, Abbott GmbH – bears the burden of establishing that transfer of the action is proper. *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 71 (D.D.C. 2005).

The defendant must make two showings to justify transfer. First, the defendant must establish that the plaintiff could have brought suit in the proposed transferee district. *Id.* at 71-72; *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Second, the defendant must demonstrate that considerations of convenience and the interests of justice

6

weigh in favor of the transfer.  *Devaughn*, 403 F. Supp. 2d at 72; *Trout Unlimited*, 944 F. Supp. at 16.

### III. ANALYSIS

#### A.   The First-Filed Rule

Because the Massachusetts Litigation was filed on August 10, 2009 – nearly three weeks before Centocor filed the D.C. Litigation – Abbott GmbH argues that the "first-filed rule" counsels in favor of transferring the Declaratory Judgment Action to the District of Massachusetts.  The parties agree that the issues in the Declaratory Judgement Action pending in this Court are identical to the issues presented in the Massachusetts Litigation.  *See* Def.'s Br. at 5-6 (explaining that the compulsory counterclaims that Centocor filed in the Massachusetts Litigation are identical to the claims presented in the Declaratory Judgment Action); Pl.'s Opp'n Br. at 4 (acknowledging that the parties and subject matter of the Declaratory Judgment Action and the Massachusetts Litigation "overlap entirely").[3] Finding no "countervailing equitable considerations" that counsel

---

[3] With regard to plaintiff's argument that this Court should disregard the first-filed rule because Abbott GmbH has no connection to Massachusetts, *see* Pl.'s Opp'n Br. at 9-11, the Court finds this argument both unsupported and unpersuasive substantially for the reasons articulated in defendant's reply brief.  *See* Def.'s Reply Br. at 4 ("Abbott GmbH filed [suit] in the District of Massachusetts because it is the most convenient forum for its witnesses (both party and third-party witnesses) that are currently identifiable, a significant amount of the documentary evidence is located there, Abbott's competing product is being developed there, and Centocor's infringement is taking place there.").

against application of the first-filed rule,[4] the Court concludes that this factor weighs heavily in favor of transfer. *Columbia Plaza Corp.*, 525 F.2d at 627; *see also, e.g.*, *Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 14 (D.D.C. 2001) ("Transfer under § 1404(a) is appropriate where there is an ongoing related case in another jurisdiction.  Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable.  Rather, all of the parties' related patent and trademark infringement claims should be decided in the same court." (internal citations and quotation marks omitted)).

**B.     Where the Cases Might Have Been Brought**

Before the Court transfers an action to another venue pursuant to § 1404(a), the defendant must show that the plaintiff could have brought the action in the proposed transferee district. *Devaughn*, 403 F. Supp. 2d at 72 (citing *Van Dusen*, 376 U.S. at 622).  In this case, the Court concludes that the D.C. Litigation could have been brought in the District of Massachusetts.

---

[4] The Court discusses the relevant equitable considerations in its § 1404(a) analysis, below.  Far from counseling against transfer, the balance of the equities favors transfer of the D.C. Litigation to the District of Massachusetts.

### 1. The Section 146 Action

35 U.S.C. § 146 permits any party to an interference proceeding that is dissatisfied with a decision of the USPTO Board to "have remedy by civil action." 35 U.S.C. § 146. The statute also provides that "[i]f there be . . . an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction . . . ." *Id.* Centocor argues that because Abbott GmbH is a German corporation "with no apparent significant contacts with any United States forum," § 146's special jurisdictional grant to the District of Columbia was the only way that it could ensure that its suit was properly filed. *See* Pl.'s Opp'n Br. at 1, 6-9 ("Centocor's choice of forum is legitimate and appropriate because Centocor could be assured of personal jurisdiction over Abbott GmbH in only this forum.").

While it is undoubtedly true that actions involving foreign defendants may be brought in the District of Columbia, § 146 does not limit the ability of other district courts to hear these actions. Instead, § 146 simply provides a mechanism to ensure that a plaintiff can obtain personal jurisdiction over a foreign defendant. *See, e.g.*, *Cell Genesys, Inc. v. Applied Research Sys.*, No. 04-1407, 2005 U.S. Dist. LEXIS 10152, at *10 (D.D.C. Jan. 18, 2005) ("[S]ection 146 does not require that [an action against a foreign entity] be filed in the District of Columbia,

but rather simply ensures that a forum is available for a civil action relating to an interference where one party is a resident of a foreign country."); *Standard Oil Co. v. Montecatini Edison S.p.A.*, 342 F. Supp. 125, 131 (D. Del. 1972) ("[T]he purpose of § 146, relating to the District Court for the District of Columbia, was merely to provide for *long arm* service of process in order to obtain *in personam* jurisdiction in cases where the adverse parties do not reside in the same state or where a party is an alien. § 146 was never intended to constrict the grant of subject matter jurisdiction of district courts over civil actions arising under the patent laws[.]").[5]

In this case, because Abbott GmbH submitted itself to the jurisdiction of the Massachusetts district court when it sued Centocor in the Massachusetts Litigation, the District of Massachusetts also has personal jurisdiction over Abbott GmbH with respect to any disputes between Abbott GmbH and Centocor related to the '128 and '485 patents. *See, e.g.*, *Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991)

---

[5] *See also Jean Patou v. Societe Anonyme Societe Technique*, 124 F. Supp. 145, 146 (S.D.N.Y. 1955)(rejecting the contention that because the defendant was a foreign corporation, § 146 gave the District Court of the District of Columbia exclusive jurisdiction; emphasizing that "[i]t seems obvious that Section 146 gives the right to bring a civil action in any court of competent jurisdiction and that therefore any District Court has jurisdiction of the subject matter," and explaining that Section 146 confers jurisdiction on the District of Columbia jurisdiction in those cases where "personal jurisdiction would otherwise be difficult or impossible to obtain").

("Trastco elected to avail itself of the benefits of the New Hampshire courts *as a plaintiff*, starting a suit against Interpole. By so doing, we think it is inevitable that Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts."); *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 897 (D. Md. 2008) ("[P]ersonal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction."); *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, No. 91-214-SLR, 1993 U.S. Dist. LEXIS 20450, at *4 (D. Del. Jan. 4, 1993) ("A court may assert personal jurisdiction over a party on the ground that the party consented to jurisdiction by submitting itself to a court's jurisdiction by instituting another, related suit."). Because the Section 146 Action is substantially related to the Massachusetts Litigation, *see* Pl.'s Opp'n Br. at 4 ("The parties and subject matter in the Massachusetts Litigation overlap substantially with the Section 146 Action . . . ."), the Court concludes that Centocor could have brought its Section 146 Action in the District of Massachusetts.[6]

---

[6] While not relevant to the Court's § 1404(a) analysis, it should be noted that Abbott GmbH has also expressly waived any objection to personal jurisdiction regarding adjudication of the § 146 action by the District of Massachusetts. *See* Def.'s Mot. at 7 n.2 ("Abbott GmbH expressly waives any objection it could

11

### 2. The Declaratory Judgment Action

Likewise, Centocor's Declaratory Judgement Action also could have been brought in the District of Massachusetts, as there is complete overlap in the parties and subject matter of the actions. *See* Pl.'s Opp'n Br. at 4 (acknowledging the actions "overlap entirely").

Accordingly, the D.C. Litigation could have been filed in the District of Massachusetts.

## C. The Balance of Private and Public Interests

Next, in determining whether considerations of convenience and the interests of justice support transfer, the Court weighs a number of private-interest and public-interest factors. *See Devaughn*, 403 F. Supp. 2d at 72. In this case, those factors weigh in favor of transfer.

### 1. Private-Interest Factors

The private-interest considerations the Court looks to when deciding whether to transfer a case include: "'(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and (6) the ease of access to sources of proof.'" *Greene v. Nat'l Head Start Assoc.*, 610 F.

---

exercise to the District of Massachusetts exercising personal jurisdiction to adjudicate Centocor's Section 146 action.").

Supp. 2d 72, 74-75 (D.D.C. 2009) (quoting *Demery v. Montgomery County*, 602 F. Supp. 2d 206, 210 (D.D.C. 2009)).

With regard to the first factor, the Court typically accords "substantial deference" to a plaintiff's choice of forum. *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000). "However, when a plaintiff is not a resident of the forum and 'most of the relevant events occurred elsewhere,' this deference is weakened." *Greene*, 610 F. Supp. 2d at 75 (quoting *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)); *see, e.g.*, *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007) (explaining that the "strong presumption" against disturbing a plaintiff's choice of forum is diminished "when the forum is not plaintiff's home forum" and "the relevant events occurred elsewhere"). Plaintiff in this case is not a resident of the District of Columbia; nor did the operative events underlying the complaints occur in the District of Columbia. Nevertheless, plaintiff argues that its choice of forum should be given deference because the District of Columbia was the only forum where it "could be assured of personal jurisdiction over Abbott GmbH." Pl.'s Opp'n Br. at 6. As discussed above, while the Court concludes that the lawsuit need not have been brought in the District of Columbia – and indeed, could have been brought in the forum of the first-filed lawsuit - the Court is still sympathetic to plaintiff's argument. Accordingly, the Court

affords some, but not substantial, deference to plaintiff's choice of forum. *See Cell Genesys,* 2005 U.S. Dist. LEXIS 10152, at *10 (concluding that plaintiff's decision to sue a foreign defendant in the District of Columbia pursuant to § 146 "was reasonable and [was] entitled to some consideration even though the District of Columbia ha[d] no meaningful ties to the parties or controversies").

Next, the Court considers the defendant's choice of forum. Defendant's choice of forum is imminently reasonable in light of the fact that it filed a related action in the District of Massachusetts nearly three weeks prior to Centocor's commencement of litigation in this forum. As discussed above, the first-filed rule weighs heavily in favor of transfer. Moreover, unlike this forum, the District of Massachusetts has at least some ties to the subject matter of this litigation. Indeed, "much of the development of the intellectual property covered by the patents-in-suit took place at ABC in Massachusetts," and many of defendant's party and non-party witnesses live or work in Massachusetts. Def.'s Opp'n Br. at 1; *see also* Decl. of Paul B. Keller (listing numerous co-inventors of the patents-in-suit that work or reside in Massachusetts). Defendant's choice of forum therefore favors transfer.

With regard to the third factor - where the claims arose - this factor is treated as neutral in the Court's analysis because it was not directly addressed by either party.

As to the fourth factor, the convenience of the parties, neither plaintiff nor defendant resides in the District of Columbia or Massachusetts. While defendant's sister company and co-defendant in the Massachusetts Litigation - ABC - has its principal place of business in Massachusetts, ABC is not a party to this litigation. Accordingly, the Court finds this factor to be neutral.

Fifth, with regard to the convenience of the witnesses, the Court considers "the availability of compulsory process to command the attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses." *Reiffin*, 104 F. Supp. 2d at 53. As a threshold matter, neither party has identified any potential witnesses that reside in the District of Columbia. Defendant, however, has identified numerous, potential witnesses that live in Massachusetts, including some non-party patent co-inventors over whom compulsory process may be necessary. *See* Decl. of Paul B. Keller; *see also* Def.'s Br. at 10-11. While plaintiff argues that the District of Columbia is more convenient for its Pennsylvania-based witnesses, plaintiff has submitted no evidence indicating that obtaining the attendance of these witnesses would be substantially more

15

expensive if the D.C. Litigation was transferred. *See* Pl.'s Ex. B, Decl. of Matthew A. Pearson ¶ 4 (explaining that this Court is approximately 140 miles closer than the District of Massachusetts). Therefore, because many of defendant's potential witnesses - including third-party witnesses - work or reside in Massachusetts, and no potential witnesses work or reside in the District of Columbia, the convenience of the witnesses weighs in favor of transfer.

The final private-interest factor that the Court considers is access to proof. Defendant argues that access to proof would be easier if the case were transferred to the District of Massachusetts because "a substantial number of Abbott's documents, including the documents and things relating to the conception, reduction to practice, and the filing and prosecution of the '485 patents, are located in Massachusetts." Def.'s Mot. at 11-12. While plaintiff asserts that "relevant records are also likely to be found in many locations outside Massachusetts," Centocor does not dispute that many relevant records are indeed located in Massachusetts. Nor does plaintiff argue that relevant records are located in the District of Columbia. Accordingly, this factor also weighs in favor of transfer.

### 2. Public-Interest Factors

Having concluded that plaintiff's choice of forum is entitled to less deference and that other private-interest

factors are neutral or favor transfer to the District of Massachusetts, the Court now turns to the public-interest factors.  The public-interest considerations include:  (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  *Devaughn*, 403 F. Supp. 2d at 72.

With regard to the familiarity of governing law, defendant argues that Judge Saylor, who is presiding over the Massachusetts Litigation, has experience with the human antibody technology implicated by the '128 and '485 patents, and will therefore be able to more efficiently and effectively resolve the pending cases.  *See* Def.'s Mot. at 13-14.  *But see* Pl.'s Br. at 13 (explaining that while two of Judge Saylor's cases "involve patents relating to human antibodies to the target TNF-alpha," "the patents involved in the Massachusetts Litigation and the D.C. Litigations relate to human antibodies to a very different target, IL-12").  Plaintiff counters that the D.C. District Court is "uniquely familiar" with § 146 actions, by virtue of its special jurisdictional grant.  *See* Pl.'s Opp'n Br. at 13.  As a threshold matter, the Court notes that these cases involve the application of federal law, with which all district court judges are generally familiar.  *See, e.g.*, *Cell Genesys*, 2005 U.S. Dist. LEXIS 10152, at *14-15 ("[T]his factor in its original design had

more to do with familiarity with the governing body of law, particularly state law, than with the specific applications of federal law . . . ."). Nevertheless, while this Court is certainly capable of resolving the pending disputes, the Court recognizes that Judge Saylor's previous experience with human antibody patents would be a valuable asset in the resolution of these cases, and indeed, would likely outweigh this Court's general familiarity with § 146 actions. The Court therefore concludes that this factor also favors transfer. *See id.* (concluding that the transferee judge's familiarity with biotechnology patent issues weighed in favor of transfer).

In terms of the relative congestion of the calendars of the potential transferee and transferor courts, neither party puts forth any evidence on this issue. Accordingly, this factor is neutral with respect to transfer.

Finally, with regard to the local interest in deciding local controversies, the Court concludes that this factor is also neutral. While defendant argues that Massachusetts has a particularized interest in the resolution of this dispute due to the fact that its sister-company ABC is a domiciliary of Massachusetts, *see* Def.'s Br. at 12, the Court finds this argument unpersuasive in light of the fact that ABC is not a party to the D.C. Litigation.

In sum, having given due consideration to the fact that the Massachusetts Litigation was first-filed, and having balanced plaintiff's choice of forum in the District of Columbia against the relevant private-interest and public-interest factors, including the general public interest in having the related litigation resolved by one court, this Court concludes that the balance of private and public interests counsels in favor of transferring the D.C. Litigation to the District of Massachusetts.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** defendant's motion to transfer venue to the District of Massachusetts. An appropriate Order accompanies this Memorandum Opinion.

**Signed:    EMMET G. SULLIVAN
            United States District Court Judge
            December 18, 2009**